# In re L-V-K-, Respondent

*Decided August 10, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An Immigration Judge's order of deportation becomes a final administrative decision upon an alien's waiver of the right to appeal.

(2) Where an alien files a motion to remand during the pendency of an appeal from an Immigration Judge's denial of a motion to reopen a final administrative decision and more than 90 days have passed since entry of that final administrative decision, the Board of Immigration Appeals lacks jurisdiction to adjudicate the motion because it is time-barred by 8 C.F.R. § 3.2(c)(2) (1999).

Peter Popov, Esquire, Beverly Hills, California, for respondent

Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, and SCIALABBA, Board Members. Dissenting Opinion: VILLAGELIU, Board Member, joined by SCHMIDT, Chairman; ROSENBERG, GUENDELSBERGER, and MOSCATO, Board Members.

MATHON, Board Member:

The respondent has filed a motion requesting that we reconsider our January 16, 1998, decision in which we denied her motion to remand the record of proceedings to the Immigration Judge to allow her to seek adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (1994). The motion to reconsider will be granted. Upon reconsideration, the motion to remand will be dismissed for lack of jurisdiction.

## I. ISSUE

The issue now before us is whether the Board has jurisdiction to entertain a motion to remand, filed more than 90 days after the entry of a final administrative order, when that motion is filed while an appeal from an Immigration Judge's denial of a previous motion to reopen is pending.

## II. PROCEDURAL HISTORY

The respondent is a native and citizen of Bulgaria who entered the United States on July 22, 1991, as a nonimmigrant visitor. On December 16, 1991, she applied for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a) (1988), and withholding of deportation under section 243(h)(1) of the Act, 8 U.S.C. § 1253(h)(1) (Supp. II 1990). On March 1, 1994, the Immigration and Naturalization Service denied that application, and the respondent was issued an Order to Show Cause and Notice of Hearing (Form I-221) on September 27, 1995.

At her deportation hearing on March 22, 1996, the respondent withdrew her application for asylum and withholding of deportation and waived appeal. She was granted voluntary departure until January 23, 1997, with an alternate order of deportation to Bulgaria.

On February 27, 1997, nearly a year after the Immigration Judge's decision became final, the respondent filed with the Immigration Judge a motion to reopen and stay deportation based on changed circumstances in Bulgaria. 8 C.F.R. § 3.2(c)(3)(ii) (1997). On April 11, 1997, the Immigration Judge denied the respondent's motion to reopen, finding that she failed to establish prima facie eligibility for asylum and withholding of deportation. On May 9, 1997, the respondent filed a timely appeal from the Immigration Judge's decision denying her motion to reopen, asserting that the Immigration Judge incorrectly gave an expansive reading to the phrase "changed circumstances."

On November 3, 1997, while her appeal to the Board was still pending, the respondent filed a motion to remand for adjustment of status. She submitted evidence of an approved employment-based visa petition with a current priority date, but indicated that she would submit an Application to Register Permanent Residence or Adjust Status (Form I-485) to the Immigration Judge after the remand was granted.

On January 16, 1998, we dismissed the respondent's appeal, finding that her motion to reopen to request asylum and withholding of deportation was properly denied by the Immigration Judge. We also denied the respondent's motion to remand because she had failed to submit the formal adjustment application as required by regulation. 8 C.F.R. § 3.2(c)(1).

On February 17, 1998, the respondent filed this timely motion to reconsider the Board's denial of her motion to remand. She also requested a stay of deportation, which we need not address in light of our decision on the motion to remand. In support of her motion, she submitted a completed application for adjustment of status.

## III. DEFINITION OF FINAL ADMINISTRATIVE DECISION

The question of when an order of deportation becomes "final" has been

settled by the Board in the interest of promoting finality in deportation proceedings. In *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), *aff'd*, 681 F.2d 107 (2d Cir. 1982), we determined that an administrative order is final when the Board renders its decision in a case on appeal or certification or, where no appeal is taken, when the time allotted for appeal has expired or the right to appeal is waived. *Id.* at 105; *see also* 8 C.F.R. § 3.39 (1999). In the case before us, the Immigration Judge's decision became final at the point in the respondent's deportation hearing when she waived her right to appeal. *See Matter of Shih*, 20 I&N Dec. 697, 699 (BIA 1993). Thus, the final administrative decision was reached on March 22, 1996, when the Immigration Judge granted the respondent voluntary departure with an alternate order of deportation and the respondent waived appeal.

## IV. REGULATORY TIME LIMITS FOR MOTIONS TO REOPEN

Pursuant to 8 C.F.R. § 3.2(c)(2) (1999), only one motion to reopen is permitted. In addition, such motion must be filed with the Immigration Judge or the Board no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later. *Id.* An exception to the time and numerical limitations exists for motions to reopen to apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality, if such evidence is material and was not available and could not have been discovered or presented at the former hearing. 8 C.F.R. § 3.2(c)(3)(ii). The motion must state the new facts to be proved and must be supported by evidentiary material. 8 C.F.R. § 3.2(c)(1).

A motion to reopen that is filed during the pendency of an appeal may be styled as a motion to remand. 8 C.F.R. § 3.2(c)(4). In substance, however, it remains a motion to reopen.

As the final administrative decision in the instant case was rendered on March 22, 1996, the respondent's motion to reopen was due on or before September 30, 1996. The respondent did not file her motion to reopen until February 27, 1997. The respondent's motion to reopen before the Immigration Judge was not time-barred, however, because it was based on alleged changed circumstances in Bulgaria and consequently fit within the regulatory exception. 8 C.F.R. § 3.2(c)(3)(ii). The Immigration Judge nevertheless found that the respondent had failed to establish changed circumstances and denied her motion to reopen.

In our January 16, 1998, decision, we affirmed the Immigration Judge's denial of the motion to reopen based on changed circumstances. We agreed with the Immigration Judge that the respondent had not demonstrated changed circumstances. In her subsequent motion to reconsider, the respon-

978

dent does not challenge our decision to dismiss her appeal of the denial of her motion to reopen. She focuses instead on our refusal to remand her case to allow her to apply for adjustment of status.

## V. MOTION TO REMAND

On November 3, 1997, while the respondent's appeal was pending before the Board, the respondent filed a motion to remand for consideration of an application for adjustment of status. We denied the motion based on the respondent's failure to comply with the regulatory requirement that an application for relief must be submitted with the motion. 8 C.F.R. § 3.2(c)(1). Upon reconsideration, we find that we did not have jurisdiction to consider the motion to remand, because this motion was, in substance, a motion to reopen that had been filed more than 90 days after the entry of a final administrative order.

As indicated earlier, a motion to reopen or to reconsider a decision rendered by an Immigration Judge that is filed while an appeal is pending before the Board may be deemed a motion to remand for further proceedings before the Immigration Judge from whose decision the appeal was taken. 8 C.F.R. §§ 3.2(b)(1), (c)(4). However, while we have the discretion to entertain such a motion, our jurisdiction to consider the motion is contingent upon the procedural posture of the underlying merits case. 8 C.F.R. § 3.2.

When the respondent filed her motion to remand to apply for adjustment of status, she was still under a final administrative order of deportation because her motion to reopen had never been granted. The appeal that was pending before the Board when she filed her motion to remand was not an appeal of an underlying merits decision, but, rather, an appeal of a denial of that earlier motion to reopen. This differs substantially from the situation where a motion to remand is filed while a direct appeal from an Immigration Judge's initial order on the merits case is still pending before us. In the latter case, there is no final administrative order until the Board renders its decision on the appeal. By contrast, where an appeal is pending from the denial of a motion to reopen by an Immigration Judge at the time a motion to remand is filed, an underlying final administrative order still exists.

In the case now before us, the date of the final administrative decision has at no time changed, as the proceedings have not been reopened. Accordingly, pursuant to the respondent's waiver of appeal at the merits hearing on March 22, 1996, she remains subject to the final administrative order of deportation that the Immigration Judge rendered on that date. Unless and until such time as the proceedings are reopened, the Board has no jurisdiction to entertain a motion to remand, which is in substance a motion to reopen, because the 90-day limit for filing a motion to reopen has expired.

979

Consequently, the respondent's motion to remand must be denied for lack of jurisdiction because the motion to remand was time-barred at the outset. Although the current motion to reconsider corrects the defect we originally observed in the remand motion, namely, the omission of a formal adjustment of status application, it cannot overcome the respondent's failure to file that motion in a timely manner. Accordingly, we find that we lack jurisdiction over the motion to remand, and we hereby modify our January 16, 1998, decision to so reflect.

## VI. SUA SPONTE REOPENING

We note that the Board has discretionary authority to reopen or reconsider cases on its own motion. 8 C.F.R. § 3.2(a). We addressed the limitations on this discretion in our recent decision, *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997), where we emphasized that the power to reopen on our own motion is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations when enforcing the regulations could result in hardship. The purpose of the 1996 motions and appeals regulations was to bring finality to immigration proceedings, not merely to prevent the filing of dilatory or frivolous motions. *Id.* Only in exceptional situations will the Board reopen proceedings sua sponte. The respondent in the case before us does not present such a situation.

## VII. CONCLUSION

The respondent's motion to reopen was denied by the Immigration Judge, and the Board affirmed that decision. Consequently, the respondent remains subject to the final administrative order issued by the Immigration Judge on March 22, 1996. The Board therefore lacked jurisdiction to consider her motion to remand for adjustment of status, as her deportation proceedings were never reopened and the motion to remand was not timely filed following the Immigration Judge's final administrative order.

Accordingly, upon reconsideration, we will deny the motion to remand for lack of jurisdiction.

**ORDER:** The motion to reconsider is granted.

**FURTHER ORDER:** Upon reconsideration, our decision of January 16, 1998, is modified to reflect that the respondent's motion to remand is denied for lack of jurisdiction.

Board Member Neil P. Miller did not participate in the decision in this case.

*DISSENTING OPINION:* Gustavo D. Villageliu, Board Member, in which

Paul W. Schmidt, Chairman; Lory D. Rosenberg, John Guendelsberger, and Anthony C. Moscato, Board Members, joined

I respectfully dissent from the majority's denial of the respondent's motion to remand in order to have her application for adjustment of status considered. The majority rules that it does not have jurisdiction. It does. The majority states that its ruling promotes the finality of immigration proceedings in the respondent's case. It does not. Finality is not synonymous with deportability.

The respondent is the beneficiary of an approved visa petition. Her case is presently before us on a timely motion to reconsider an adverse decision in her case. While her motion was pending, her priority date became current, providing her with visa availability. Consequently, rather than further tax our scarce administrative resources reviewing her pending motion to reconsider, the respondent, instead, requests that the case be remanded to consider her application for adjustment of status for which she appears prima facie eligible.

The regulation at 8 C.F.R. § 3.1(d)(2) (1999) specifies that we can remand any case before us for further proceedings without reaching a determination. Once a case is remanded, such a remand, unless specifically limited, is for any appropriate purpose. *See Matter of Patel*, 16 I&N Dec. 600 (BIA 1978). Moreover, 8 C.F.R. § 3.1(d)(1) specifically provides the Board with the Attorney General's discretionary authority as appropriate and necessary for the resolution of the case.

Congressional intent is always primarily derived from the language of the statute enacted by Congress. Section 203(b) of the Act, 8 U.S.C. § 1153(b) (1994), provides preference immigration status to the respondent under the Act and thus indicates a congressional intent to allow the respondent to immigrate to the United States. Moreover, Congress has also enacted grandfather provisions for adjustment of status applicants seeking the benefits of section 245(i) of the Act, 8 U.S.C. § 1255(i) (1994 & Supp. II 1996), for petitions submitted before January 14, 1997. This recent congressional enactment gives further support for interpreting our regulations consistent with the congressional directive to provide this respondent with an adjustment of status forum to have her immigration application considered.

The Attorney General's intent is similarly derived from the regulations she enacted. The regulations at 8 C.F.R. part 245 specifically prescribe the adjustment of status process as the sole procedure for applying to immigrate while in this country; and 8 C.F.R. § 245.2(a)(2) (1999) specifies that deportation proceedings are the only process prescribed for considering the respondent's application. Consequently, when the majority strains to interpret the regulation to deprive the respondent of a forum for her adjustment application, it does so in contravention of the congres-

981

sional intent that applicants with a priority date before January 14, 1997, should be allowed to immigrate through the adjustment of status process and the Attorney General's directive to prescribe such a process for aliens already in proceedings.

Denying the respondent's motion does not promote finality in her immigration proceedings. As discussed above, she is the beneficiary of an approved visa petition. If deported, she will have to pursue her visa abroad, contrary to congressional intent, and she will also require approval of waivers of inadmissibility solely as a result of the majority's refusal to provide the prescribed forum for her application. *See* section 212(a)(9) of the Act, 8 U.S.C. § 1182(a)(9) (Supp. II 1996). Promoting deportability is not promoting finality in immigration determinations when the eventual result prescribed by Congress for this respondent, who is presently in the United states as an asylum applicant, is her admission into the United States as a qualified employment-based preference immigrant. Remanding her case to allow her application to be considered is the appropriate and necessary action required to promote finality in her immigration proceedings.